IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT GARY MOORE                *

         Plaintiff,             *

         v.                 *   Civil Action No. JKB-16-2410

WARDEN (NAME UNKNOWN) OF     *
  NORTH BRANCH CORRECTIONAL
  INSTITUTION                 *
THE WHOLE MEDICAL STAFF
THE PERSON IN CHARGE OF MEDICAL  *
  ENTITY
          Defendants.      *
                        *****

## MEMORANDUM

On June 27, 2016, the court received for filing Robert Gary Moore's self-represented 42 U.S.C. § 1983 civil rights action. Moore seeks injunctive relief and damages from unidentified medical personnel and a prison administrator at the North Branch Correctional Institution ("NBCI"). Pending are Wexford Health Sources, Inc.'s (Wexford")[1] motion and supplemental motion to dismiss or in the alternative, for summary judgment, filed on behalf of defendant "The Person in Charge of Medical Entity."[2] ECF Nos. 11 & 17. Defendant Warden Bishop has also filed a motion to dismiss or, in the alternative, motion for summary judgment.[3] ECF No. 13. Moore has filed an opposition response and Wexford has filed a reply. ECF Nos. 19 & 20.

---

[1]     The court takes judicial notice that Wexford is the private entity contracted by the Department of Public Safety and Correctional Services to provide medical care to state inmates.

[2]     The Clerk shall be directed to amend the docket to substitute Wexford for defendant "The Person in Charge of Medical Entity."

[3]     The Clerk shall be directed to amend the docket to substitute Warden Frank Bishop for defendant "Warden (Name Unknown)."

The matter is ready for disposition; no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2016). For reasons that follow, defendants' motions, construed as motions for summary judgment, ARE GRANTED.

## I. Background

Moore alleges that he was subject to a due process violation and "medical neglect" because his grievances and sick-call claims regarding contaminated drinking water at NBCI (and his medical conditions arising from same) were ignored. He asserts that the main sewage pipe at NBCI ruptured and defendants should have known that he and other inmates were drinking "deadly water" after several prisoners had developed symptoms caused by deadly bacteria. Moore contends that he received no response to his administrative remedy procedure ("ARP") grievance concerning contaminated drinking water. He states that he submitted an ARP in June of 2016, complaining of contaminated drinking water, and the ARP was destroyed. ECF No. 1, pp. 4-5. Moore further alleges that he was never seen for sick-call slips concerning breathing problems and pain submitted in June and August of 2015 and January of 2016. *Id.*, p. 5.

## II. Standard of Review

Defendants' motions are styled as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that  conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller*, Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149.

Because defendants have filed and relied on declarations and exhibits attached to their dispositive motions, their motions shall be treated as a summary judgment motions.

Summary judgment is governed by Rule 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to…the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)).

Because Moore is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a prisoner must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.[4] *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires

---

[4] A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citing *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)).

knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer, 511 U.S. at 844*). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown*, 240 F.3d at 390 (citing *Liege v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)). Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LaFevere*, 423 F. Supp. 2d 1064, 1070-71 (C.D. Cal. 2006).

An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need that was objectively sufficiently serious and that subjectively prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F.2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by

demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993) (exposure to environmental tobacco smoke). The key in determining whether prison conditions become cruel and unusual requires examination of the effect on the inmate. *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

Title 42, United States Code, § 1983 medical liability on the part of prison administrators requires a showing that "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted).

## IV. Analysis

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Moore has failed to point to any personal conduct by Wexford, in regard to the matters alleged in his complaint. His effort to hold Wexford liable based on its supervisory role is unavailing. It is entitled to dismissal.

Moreover, Moore has failed to demonstrate the health care personnel were deliberately indifferent to a serious medical need. The minimal exhibits provided by Wexford indicate that no sick-call slips were received from Moore in June and August of 2015 and January of 2016. ECF No. 11-3, Beeman Aff. The record shows that Moore was seen for a periodic examination by Registered Nurse Practitioner Bilak on or about March 15, 2016. His vital signs were normal and the examination was unremarkable. His respiration was found to be regular and he had no cough or wheezing issues. ECF No. 11-4. Further, blood testing, including a complete blood count or "CBC" and basic metabolic evaluation, was conducted on or about March 26, 2016, and revealed no clinically significant abnormal results. ECF No. 11-5. There is no showing that Moore's respiratory system or overall health has been compromised.

Moore's claim against defendant Bishop also fails. In his dispositive motion, Warden Bishop states that Moore has been housed at NBCI since March 5, 2014. He maintains that there was no rupture of the main NBCI sewage line, sewage leak, or contamination of NBCI's potable water. ECF No. 13-2, Isler Decl. Bishop argues that the potable water at NBCI does not come from a sewage line, but rather from the city of Cumberland, Maryland, through a pipeline system attached to the water main. *Id*. He states that the potable water comes from the same water source used by residents of the City of Cumberland. He further affirms that he has no involvement in Moore's medical treatment and he relies on the assessments and reports of health care staff regarding the care and treatment of inmates. ECF No. 13-5, Bishop Decl.

In response to defendants' motions, Moore claims that the blood test results provided are irrelevant as at the time the blood was taken (March of 2016) the issues regarding the drinking water "had not surfaced yet." ECF No. 19. He contends that he was informed of the past water problems sixty days after his blood was taken. Moore further argues that Bishop's declaration did not affirm that the water was not contaminated and that inmates were not diagnosed with

bacterial illness from drinking water.  He speculates that drinking contaminated water can cause various future medical complications and conditions, resulting in death.  ECF No. 19.

Moore has been called upon to refute the declarations provided by Bishop to show a rupture or breakdown of the NBCI sewage line, contamination of the potable water, and injury from the alleged contamination.   He has not done so.  The full record provided the court shows that although Moore received minimal medical care during the time period in question, his health care examinations and blood test results were unremarkable.  Bishop asserts that he plays no role in making medical decisions, does not have any authority over the decisions of health care staff, and relies on their expertise.   Bishop is entitled to summary judgment in this case.

A constitutional violation cannot be made given the facts of this case.  Judgment will be entered in favor of defendants in a separate Order to follow.[5]


Date: July 7, 2017                        _____/s/_____
                                          James K. Bredar
                                          United States District Judge

---

[5]     The complaint against defendant "The Whole Medical Staff" shall be dismissed.